**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**July 2, 2026**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2025AP565**

**STATE OF WISCONSIN**

Cir. Ct. No. 2024SC1032

**IN COURT OF APPEALS**
**DISTRICT IV**

MICHAEL ADAMS,

    PLAINTIFF-APPELLANT-CROSS-RESPONDENT,

V.

ROUSCH RENTALS,

    DEFENDANT-RESPONDENT-CROSS-APPELLANT.

---

APPEAL and CROSS-APPEAL from a judgment of the circuit court for La Crosse County: ELLIOTT M. LEVINE, Judge. *Affirmed in part, reversed in part and cause remanded with directions*.

¶1 NASHOLD, J.[1] Michael Adams appeals, and Rousch Rentals cross-appeals, a judgment awarding Adams a partial refund of a security deposit that

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(a) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

Rousch Rentals withheld.[2]  Adams challenges the judgment to the extent that it reflects the circuit court's denial of his request for double damages and attorney fees, which he argues are required under WIS. STAT. § 100.20(5).  In its cross-appeal, Rousch Rentals challenges the judgment in Adams' favor, arguing that the court erroneously exercised its discretion and erred in its calculations when it required Rousch Rentals to return $274 of the withheld security deposit to Adams.

¶2      For the reasons set forth below, I reverse the circuit court's determination that Adams was not entitled to double damages or attorney fees under WIS. STAT. § 100.20(5), and I remand for the court to determine double damages, costs, and reasonable attorney fees under § 100.20(5).  As to Rousch Rentals' cross-claim, I affirm the court's determination that Rousch Rentals unlawfully withheld part of Adams' security deposit.  However, because it is undisputed that the court miscalculated the judgment amount, on remand, I direct the court to enter judgment reflecting proper calculations in addition to the amounts required under § 100.20(5).

## BACKGROUND

¶3      Adams and his sister began renting an apartment from Rousch Rentals in 2022 and paid a security deposit of $1,650.  They renewed the lease for an additional one-year term in March 2023, and after Rousch Rentals refused to again renew their lease, they vacated the apartment in May 2024.  After they

---

[2] On appeal Rousch Rentals argues, as it did in the circuit court, that its correct name is Roush Rentals, LLC, but that Adams incorrectly identified its name in the Summons and Complaint as Rousch Rentals.  Because the circuit court caption uses the name Rousch Rentals and because no request was made to formally correct the name by entry of a circuit court order, I use the name as it appears in the circuit court caption.

vacated the apartment, Rousch Rentals returned $432.90 of the security deposit and withheld the remaining $1,217.10. Rousch Rentals alleged that the withheld amount of $1,217.10 was the necessary cost for recarpeting and repainting the apartment unit to remove the odor of marijuana. Specifically, Rousch Rentals listed the following expenses for replacing the carpet in the apartment unit's two bedrooms (the apartment's only carpeted rooms) and repainting the entire apartment unit:

- $350 in labor costs for carpet replacement in the two bedrooms
- $619.20 for new carpet
- $120 in labor costs for repainting
- $62.90 for paint
- $65 for one hour of cleaning after carpet replacement and repainting.

¶4      Adams filed a pro se action against Rousch Rentals, alleging an unreasonable withholding of the security deposit. Rousch Rentals filed an answer that included information regarding: when Rousch Rentals first became aware of the odor of marijuana in the common hallway of the apartment building (April 2023); reports that Rousch Rentals received from maintenance workers, other tenants, and prospective tenants about the marijuana odor in Adams' apartment unit and in the common hallway; Rousch Rentals' notice of nonrenewal to Adams for smoking marijuana in Adams' apartment unit; and discussions between Adams and Rousch Rentals' property manager during the May 2024 move-out inspection and the property manager's discussion with Adams about the marijuana odor.

¶5      After mandatory mediation failed, a court trial was held, at which Adams was represented by counsel and Rousch Rentals appeared pro se by its owner. At the beginning of the trial, the circuit court stated that it knew the

background of the case from reviewing the parties' submissions and that the questions for trial appeared to be whether the apartment actually smelled like marijuana and whether the smell "trash[ed]" the carpet and paint. The witnesses at trial were Adams and the property manager for Rousch Rentals.

¶6    Adams' testimony included the following. Adams smoked marijuana in his apartment unit a "handful of times," but neither he nor his sister had done so since October 2023 when Rousch Rentals sent a notice to all tenants reminding them of the smoking prohibition. Adams first became aware that Rousch Rentals believed that marijuana smoking was occurring in his apartment when he received the notice of nonrenewal. Before moving out of the apartment, Adams followed the checklist for cleaning the apartment, including scrubbing down the walls and floors. When the property manager did the move-out inspection with Adams, the property manager mentioned that she was "'impressed with how clean everything was" but toward the end of the inspection discussed with Adams the marijuana odor in the apartment. Adams did not smell marijuana in the apartment and could only smell the odor of the self-cleaning oven. He also told the property manager that he believed that other tenants in the apartment building had been smoking marijuana. The property manager told Adams that "there were things that landlords could potentially do to get around having to recarpet and repaint," which led Adams to believe that recarpeting and repainting would not be needed. Adams agreed that the lease he signed says that smoking, including marijuana, is "strictly prohibited" in the rental units and that "[a]ny damage … as a result of smoking products would be the responsibility of the tenant."

¶7    The property manager testified in relevant part as follows. As soon as she walked into Adams' apartment unit for the move-out inspection, she was

4

able to smell marijuana in the living room, an odor that "became even more present in the spare bedroom of that unit." She discussed the issue with Adams, telling him that "generally this would result in repainting, recarpeting of the unit, as it's the only way that we can get the smell out of the apartment completely." Adams told her that he did not know if that was going to take care of it because he could sometimes smell marijuana in the common hallway as well.

¶8    After Adams and his sister moved out, the property manager returned to the apartment unit to show it, and she again smelled marijuana, "in the living room space, spare bedroom and throughout the apartment." The property manager also received complaints from a few prospective tenants asking what would be done about the marijuana odor if they decided to rent the apartment. One prospective tenant decided not to rent the unit because of the odor.

¶9    The property manager agreed that, pursuant to the lease, Rousch Rentals could charge only $50 per hour for cleaning but that they had withheld from Adams $65 per hour for cleaning. When Adams and his sister moved into the apartment, the apartment building was only about two and one-half years old, and Adams and his sister were only the second tenants in the apartment unit.

¶10    At the close of evidence, the circuit court concluded that although Rousch Rentals lawfully withheld part of the security deposit due to the odor of marijuana, part of the security deposit was unlawfully withheld. Specifically, as to the hour of cleaning services, the court found that $15 was unlawfully withheld because it was undisputed that the lease permitted cleaning services at only $50 per hour but that Rousch Rentals had withheld $65. Regarding the carpet, the court found that the odor was present but that "the need to completely replace the carpet … [was] a little bit excessive." The court stated that it was "fair" to cut the

cost of the carpet material in half but that it would allow Rousch Rentals to withhold the entire amount that it had withheld for labor costs to replace the carpet. As to painting, the court found, "I do concede painting partially to get rid of the smell, but I can't imagine that you'd have to paint the entire unit." Therefore, the court allowed withholding of $60 (rather than the $120 withheld) in labor costs for repainting and $23 (rather than the $62.90 withheld) for the paint itself. The judgment against Rousch Rentals also included costs and additional fees, resulting in a total judgment of $453.50.

¶11    Following trial, on the same day, Adams filed a letter with the circuit court requesting that the court award double pecuniary damages, along with costs and attorney fees, pursuant to WIS. STAT. § 100.20(5). The court denied Adams' request on the basis that Adams had not made this request at the trial or in his complaint.

## DISCUSSION

¶12    Review of the appeal and cross-appeal involves the interpretation of statutes and administrative regulations, which this court reviews de novo. *Boelter v. Tschantz*, 2010 WI App 18, ¶6, 323 Wis. 2d 208, 779 N.W.2d 467. This court interprets administrative regulations using the rules of statutory interpretation. *Piper v. Jones Dairy Farm*, 2020 WI 28, ¶13, 390 Wis. 2d 762, 940 N.W.2d 701. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.*

¶13 I first address the underlying judgment, which is the subject of Rousch Rentals' cross-appeal, and then address double damages and attorney fees under WIS. STAT. § 100.20(5), which is the subject of Adams' appeal.

## I. Rousch Rentals' Cross-Appeal: Judgment in Adams' Favor

¶14 Both WIS. STAT. § 704.28(1)(a) and WIS. ADMIN. CODE § ATCP 134.06(3)(a)1. provide that "[w]hen a landlord returns a security deposit to a tenant after the tenant vacates the premises, the landlord may withhold from the full amount of the security deposit only amounts *reasonably necessary*" to pay for "tenant damage, waste, or neglect of the premises." (Emphasis added.)[3] It is the landlord's burden "to prove the extent of damage to the premises and to prove the cost of restoring the demised premises." *Rivera v. Eisenberg*, 95 Wis. 2d 384, 387, 290 N.W.2d 539 (Ct. App. 1980).

¶15 The determination of damages is within the discretion of the circuit court. *Three and One Co. v. Geilfuss*, 178 Wis. 2d 400, 410, 504 N.W.2d 393 (Wis. App. 1993). A circuit court's findings of fact with regard to damages will not be upset on appeal unless clearly erroneous. *Id.*; *see also* WIS. STAT. § 805.17(2) (circuit court's findings following a court trial will be upheld unless such findings are clearly erroneous). "A circuit court's findings of fact are clearly erroneous when the finding is against the great weight and clear preponderance of the evidence." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530. Under the clearly erroneous standard, the circuit court's findings of fact will be affirmed on appeal as long as there is evidence in

---

[3] All references to WIS. ADMIN. CODE § ATCP are to the May 2026 register.

the record that would permit a reasonable person to make the same findings, even if contrary findings could also reasonably be made based on the same evidence. *Id.*

¶16      Rousch Rentals challenges the circuit court's reduction of costs for recarpeting and repainting, which resulted in the judgment requiring Rousch Rentals to return an additional $274 of the security deposit to Adams.  Of that amount, Rousch Rentals concedes that the court properly determined that $15 was improperly withheld because Rousch Rentals charged Adams $65 per hour for cleaning rather than the $50 amount agreed to in the lease.  Thus, it is undisputed that $15 of the security deposit was unreasonably withheld, contrary to WIS. STAT. § 704.28(1)(a) and WIS. ADMIN. CODE § ATCP 134.06(3)(a)1.

¶17      However, Rousch Rentals argues that the circuit court's reduction of costs associated with recarpeting and repainting is not supported by the evidence and is therefore clearly erroneous.  In support of this argument, Rousch Rentals relies on *Geilfuss*.  In that case, the circuit court determined that the tenants committed waste to a duplex unit by damaging multiple items, including carpeting and a storm door.  *Geilfuss*, 178 Wis. 2d at 407.  The court awarded replacement costs for both items but subtracted for depreciation.  *Id.* at 410.  This court reversed the circuit court's deduction for depreciation, concluding that "the tenants did not offer evidence on depreciable life" and that "such evidence is outside the field of general knowledge." *Id.*  This court observed that circuit court findings "must be based upon testimony of witnesses or other evidence" and concluded that because there was no evidence regarding depreciation, the circuit court's "*sua sponte* reduction of the replacement cost of the carpeting and storm door for depreciation [was] clearly erroneous." *Id.* at 410-11.

¶18     Rousch Rentals argues that this case is similar to *Geilfuss* because, according to Rousch Rentals, the record contains no evidence to support a reduction for the costs of recarpeting and repainting, particularly given the circuit court's finding that there was an odor of marijuana in Adams' apartment unit.  I disagree.

¶19     First, simply because the circuit court found that there was an odor of marijuana in the apartment unit does not mean that the court was required to credit the property manager's testimony that this odor necessitated the recarpeting and repainting of the entire unit.  Further, unlike in *Geilfuss*, in which there was no evidence presented with respect to depreciation, a subject which "is outside the field of general knowledge," here, there was evidence in the record to support the court's findings that "the need to completely replace the carpet" was a "little bit excessive" and that although "painting partially to get rid of the smell" was reasonable, the court "[couldn't] imagine that you'd have to paint the entire unit."

¶20     Such evidence includes the following.  First, although the property manager testified that she noticed the odor of marijuana throughout the apartment when conducting the move-out inspection and that she noticed the odor as soon as she walked into the living room area, she also testified that it "became even more present in the spare bedroom of that unit."  The circuit court could have reasonably construed this testimony as meaning that one of the two carpeted areas—the "spare bedroom"—had a stronger odor than other areas of the apartment.

¶21     In addition, Adams testified that he had only smoked a "handful of times" in the apartment and that he and his sister had stopped smoking in the apartment in October 2023, which was more than six months before they moved

out in May of 2024. Adams also testified that he and his sister had scrubbed the walls and floors before the inspection, that he could not smell the odor of marijuana in the apartment at the time of the inspection and could only smell the self-cleaning oven cycle that they had run, and that, based on statements the property manager made to him, he did not believe Rousch Rentals would need to recarpet or repaint.

¶22 Although the circuit court did not refer to this specific evidence or make explicit findings as to its weight or credibility, on appeal this court searches the record for evidence supporting the circuit court's discretionary determinations rather than for evidence opposing them. *Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶12. *See also **Burkes v. Hales***, 165 Wis. 2d 585, 590-91, 478 N.W.2d 37 (Ct. App. 1991) ("'Because the exercise of discretion is so essential to the [circuit] court's functioning, we generally look for reasons to sustain discretionary decisions.'" (quoted source omitted)). Evidence in the record supports the court's findings, and Rousch Rentals has therefore not shown that the court's findings were clearly erroneous. The court's findings, and its judgment in Adams' favor, reflect its implicit determination that withholding security deposit amounts for recarpeting and repainting the entire unit was not "reasonably necessary" under WIS. ADMIN. CODE § ATCP 134.06(3)(a)1. and was therefore unlawful. *See* § ATCP 134.06(3)(a)1. (landlord may withhold from security deposit "only amounts *reasonably necessary*" to pay for tenant damage, waste, or neglect of the premises (emphasis added)).

¶23 Accordingly, I affirm the circuit court's reduction of the amount that Rousch Rentals was legally entitled to withhold. However, I agree with the parties that the court's specific calculation of $274 as the amount unlawfully withheld appears to be based on several miscalculations. Thus, I reverse the judgment

insofar as it reflects such miscalculations and remand to the circuit court for a proper calculation that reflects the court's original intent.

## II. Adams' Appeal: WIS. STAT. § 100.20(5)

¶24    Adams argues that the circuit court erred in declining to award him double damages and reasonable attorney fees under WIS. STAT. § 100.20(5). Section 100.20(5) provides:

> Any person suffering pecuniary loss because of a violation by … any order issued under this section may sue for damages therefor in any court of competent jurisdiction and *shall* recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney fee.

(Emphasis added.)    WISCONSIN ADMIN. CODE ch. ATCP 134, under which Adams' claim was brought, was promulgated by "order" as contemplated by § 100.20(5). *See Shands v. Castrovinci*, 115 Wis. 2d 352, 357, 340 N.W.2d 506 (1983). Thus, § 100.20(5) "gives any person who suffers damages because of a violation of … [c]h. [ATCP] 134, a right to recover twice the amount of pecuniary loss, together with costs, including a reasonable attorney fee." *Shands*, 115 Wis. 2d at 357. In cases such as this, "the use of the word 'shall' in the relevant statutory provision indicates attorney fees awards for prevailing tenants are *mandatory*." *Id.* (emphasis added). "[I]f a court determines that a landlord has violated [§ ATCP] 134.06, it is required under the plain unambiguous language of [§ 100.20(5)] to award double damages and attorney fees." *Armour v. Klecker*, 169 Wis. 2d 692, 698, 486 N.W.2d 563 (Ct. App. 1992).

¶25    This court has recognized that requiring a landlord to pay double damages and attorney fees may seem "harsh" when the landlord believes he or she has a claim to the security deposit. *Id.* at 701. However, this result "is consistent

with the purpose of the regulations, which is to discourage the retention of security deposits except in the clearest of cases." ***Id.*** It also serves the "purposes and policy interests behind the provisions of [WIS. STAT. §] 100.20(5)." ***Shands***, 115 Wis. 2d at 358. These include: encouraging "injured tenants to bring legal actions to enforce their rights under the administrative regulations" and to act as "'private attorney[s] general'" by enforcing not only their individual rights but the public's rights; "deterring impermissible conduct by landlords"; and "provid[ing] a necessary backup to the state's enforcement powers" under § 100.20 because the "sheer number of violations prevent [the state] from proceeding against all violators." ***Id.***

¶26 Here, on the same day of trial, Adams filed a request for double damages and attorney fees under WIS. STAT. § 100.20(5), but the circuit court denied the request on the basis that the request was not made during the trial itself or in Adams' complaint.[4] On appeal, Adams argues that the court did not give Adams the opportunity to make such a request at trial, noting that the court informed the parties that there was no time for closing arguments and stated after making its ruling, "All right. So that will be the total. Thank you. And that's all the time we have." Adams also relies on authority, noted above, demonstrating that double damages and attorney fees are mandatory when a tenant prevails on a claim brought under WIS. ADMIN. CODE ch. ATCP 134.[5]

---

[4] As stated, Adams filed his complaint pro se but by the time of trial was represented by counsel.

[5] Adams argues that even if this court agrees with Rousch Rentals that the costs for recarpeting and repainting the entire unit were properly withheld, double damages and attorney fees under WIS. STAT. § 100.20(5) would nevertheless be required because it is undisputed that Rousch Rentals improperly withheld $15 for cleaning costs. In light of my decision in this case affirming the reduction for recarpeting and repainting costs, I need not address this argument.

¶27 In response, Rousch Rentals does not argue that the circuit court properly denied Adams' request on the basis that the request was not made during trial or in the complaint, nor does my limited research reveal such a requirement. Instead, Rousch Rentals argues that the request was properly denied because the court did not find that Rousch Rentals violated WIS. ADMIN. CODE § ATCP 134.06. According to Rousch Rentals, the court's ruling "is entirely based on the principles of fairness, not violations of § ATCP 134.06." Rousch Rentals refers to the language in WIS. STAT. § 100.20(5), which states that in order to be entitled to double damages and attorney fees, the tenant's pecuniary loss must be "because of a violation" under WIS. ADMIN. CODE ch. ATCP 134.

¶28 I reject the premise that the circuit court did not make a determination that Rousch Rentals violated WIS. ADMIN. CODE § ATCP 134.06. Although it is true that the court made comments about what was fair to do under the circumstances, the court also explicitly stated that "the need to completely replace the carpet [was] a little bit excessive" and that it could not imagine that repainting the entire apartment unit was necessary. As noted above, in so finding and in entering judgment in favor of Adams, the court implicitly determined that withholding amounts to recarpet and repaint the entire unit was not "reasonably necessary" under § ATCP 134.06(3)(a)1.

¶29 Thus, based on the plain language of WIS. STAT. § 100.20(5) and the case law set forth above, double damages and attorney fees were mandatory. Accordingly, I reverse the judgment and remand for the circuit court to determine double damages, reasonable attorney fees, and costs under § 100.20(5) and to enter judgment reflecting those amounts and as properly calculated to reflect the court's intent pursuant to the directive in the preceding section.

*By the Court.*—Judgment affirmed in part, reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.